COPY

1  ROSMAN & GERMAIN LLP
2  Daniel L. Germain (Bar No. 143334)
   Germain@Lalawyer.com
3  16311 Ventura Boulevard, Suite 1200
   Encino, CA 91436-2152
4  Telelphone:  (818) 788-0877
5  Facsimile:  (818) 788-0885
6  *Attorneys for Plaintiff*

7  [Additional Counsel Appear on Signature Page]

8

9                  **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | MARK WALCZYK, Individually    ) **Case No.**
13 | and On Behalf of All Others    ) **CV09-03967 RSWL (AGRx)**
   | Similarly Situated,            ) **CLASS ACTION COMPLAINT**
14 |                                )
   |          Plaintiff,            )
15 |                                )
   |     vs.                        )
16 |                                )
17 | BIDZ.COM, INC., DAVID          )
   | ZINBERG, LEONID KUPERMAN,      )
18 | LAWRENCE Y. KONG and           )
   | CLAUDIA Y. LIU,                )
19 |                                )  **JURY TRIAL DEMANDED**
   |          Defendants.           )
20 |                                )
21 |                                )
                                    )
22

23

24

25

26

27

28

- 1 -
CLASS ACTION COMPLAINT

Plaintiff, Mark Walczyk ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Bidz.com, Inc. ("Bidz.com" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal class action on behalf of purchasers of Bidz.com's securities between August 13, 2007 and November 27, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Bidz.com is an online retailer of jewelry, featuring a live auction format. The Company offers its products through a continuous live format.  The majority of its auctions are short-term, often lasting less than one hour.  Its product inventory includes gold, platinum, and silver jewelry set with diamonds, rubies, other precious and semi-precious stones, and watches.  In addition to its own products, the Company has several independent merchants that sell art, collectibles and gift items.  The Company sells these products through its website:  www.bidz.com.

3.      On November 26, 2007, a *Citron Research* ("*Citron*") article appeared on the website, Stocklemon.com, which revealed a number of problems with the Company's business model.  Among other things, the article exposed the Company's questionable bidding and appraisal practices.  Furthermore, the article disclosed that the Company was accumulating a lot of inventory without generating cash.  The article also stated that one of Bidz.com's largest shareholders, Saied Aframian,

1  manager of a major jewelry supplier to Bidz.com and one of its largest shareholders,

2  had been convicted in the 1980's for fencing stolen jewelry.

3      4.      On November 27, 2007, Bidz.com hosted a conference call to address the

4  claims made in the *Citron* article.  David Zinberg, Chief Executive Officer ("CEO") of

5  Bidz.com, stated, among other things that the Company learned only the previous day

6  that Saied Aframian was a convicted felon.

7      5.      Then, on November 28, 2007, a second *Citron* article was published

8  providing additional details regarding the Company's questionable bidding practices

9  including the practice known as "shill bidding" in order to drive up the price of items

10  up for auction. The article disclosed that certain items were bid on hundreds of times

11  by the same few bidders.

12      6.      On the negative news regarding the Company's business practices, the

13  Company's stock dropped from a closing price of $19.94 per share on Friday,

14  November 23, 2007, to a low of $10.10 per share on Wednesday, November 28, 2007,

15  for a loss of nearly 50 percent on unusually heavy trading volume.

16      7.      The Complaint alleges that, throughout the Class Period, defendants

17  failed to disclose material adverse facts about the Company's financial well-being,

18  business operations, and prospects.  Specifically, defendants failed to disclose or

19  indicate the following: (1) that the Company engaged in a practice known as "shill

20  bidding" which artificially raised the auction price of its products; (2) that the

21  Company was not forthright with its customers regarding "retail value" or "appraised

22  value" of its products; (3) that the Company lacked adequate internal and financial

23  controls; (4) that, as a result of the foregoing, the Company's financial statements were

24  materially false and misleading at all relevant times; and (5) that, as a result of the

25  foregoing, the Company's statements about its financial well-being and future business

26  prospects were lacking in any reasonable basis when made.

27      8.      As a result of defendants' wrongful acts and omissions, and the

28  precipitous decline in the market value of the Company's securities, Plaintiff and other

Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

10.   This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

11.   Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, Bidz.com's principal executive offices are located within this Judicial District.

12.   In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.   Plaintiff, Mark Walczyk, as set forth in the accompanying certification, incorporated by reference herein, purchased Bidz.com's securities at artificially inflated prices during the Class Period and has been damaged thereby.

14.   Defendant Bidz.com is a Delaware corporation with its principal executive offices located at 3562 Eastham Drive, Culver City, CA 90232

15.   Defendant David Zinberg ("Zinberg") was, at all relevant times, the Company's President, Chief Executive Officer ("CEO"), and Chairman of the Board of Directors since the Company was founded in 1998.

16.   Defendant Leonid Kuperman ("Kuperman") is, and at relevant times was,

President and Chief Technology Officer of Bidz.com.

17.    Defendant Lawrence Y. Kong ("Kong") is, and at all relevant times was, Chief Financial Officer ("CFO") and a director of Bidz.com.

18.    Defendant Claudia Y. Liu ("Liu") is, and at all relevant times was, Chief Operating Officer of Bidz.com.

19.    Defendants Zinberg, Kuperman, Kong, and Liu (the "Individual Defendants") because of their positions with the Company, possessed the power and authority to control the contents of Bidz.com's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading. Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS
### Background

20.    Bidz.com operates as an online retailer of jewelry in the United States and internationally. It operates a website, www.bidz.com, for the purpose of selling merchandise, utilizing an online sales auction platform; as well as fixed price online store at www.buyz.com. The company's product inventory includes gold, platinum, and silver jewelry sets with diamonds, rubies, emeralds, sapphires, and other precious and semi-precious stones; and a selection of jewelry, including rings, necklaces, earrings, bracelets, jewelry sets, and watches and accessories. It also acts as an agent

CLASS ACTION COMPLAINT

in the sale of certified merchant merchandise owned by third parties.  The Company was founded in 1998 and is headquartered in Culver City, California.

21.     During the Class Period, Defendant's issued false and misleading statements which were intended to display to the public that the Company was financially sound, however in reality, Bidz.com was operating with material deficiencies and substantial undisclosed problems at the core of its business.

**Materially False and Misleading**
**Statements Issued During the Class Period**

22.     The Class Period begins on August 13, 2007.  On this day, the Company issued a press release entitled "Bidz.com, Inc. Announces Second Quarter 2007 Financial Results."  Therein, the Company stated, in relevant part:

> Bidz.com, Inc. (NASDAQ:BIDZ), a leading online auctioneer of jewelry, today reported financial results for the second quarter and six months ended June 30, 2007.
>
> ***Net revenue for the second quarter of 2007 was $39.1 million, a 20.6% increase compared with $32.4 million reported for the second quarter of 2006.*** This increase was due primarily to the growth in demand for the Company's jewelry products and the increase in the average order value, which grew by 28.6% year-over-year to $171. During the second quarter, the Company had an average of nearly 2,700 orders per day as compared to an average of 2,800 orders per day in the prior year's quarter, and the acquisition cost per new buyer declined to $38 versus $49 in the second quarter of 2006.
>
> *              *              *
>
> ***The Company's pre-tax income for the second quarter of 2007 was $3.7 million, above the Company's original guidance of $2.8-$3.3 million, and compared to $151,000 in the prior period in 2006. Net income for the second quarter of 2007 increased to $2.9 million, or $0.12 per fully diluted share on 24.1 million weighted average shares outstanding, compared to net income of $147,000, or $0.01 per fully diluted share on 23.8 million weighted average shares outstanding in the same period of 2006.*** The increase in net income was due primarily to the increase in net revenue, higher gross profit margins and non-recurring costs related to the Company's withdrawn initial public offering of $1.2 million in the 2006 second quarter.
>
> ***"The second quarter was an exciting one for Bidz.com as our stock began trading on the Nasdaq in June, and we are proud to be reporting strong sales and earnings growth to our shareholders,"*** said David Zinberg, President and Chief Executive Officer of Bidz.com. "Traffic to our site continues to grow driving an increasing number of items sold and importantly, the average order value in the second quarter increased approximately 29% year-over-year."

- 6 -

Mr. Zinberg continued, *"We are very pleased with the momentum we are seeing and particularly the leverage and scalability of our model which resulted in a significant increase in our bottom-line. We are keenly focused on continuing to achieve strong growth and profitability and further leveraging our model to deliver earnings, cash flow and shareholder returns."*

In the second quarter, gross profit increased 41.4% to $10.9 million from $7.7 million in the second quarter of 2006. Gross margin in the second quarter of 2007 was 27.8%, compared with 23.7% in the same period of 2006. The gross margin improvement versus a year ago is attributable to the higher prices from auction sales and not continuing the Company's free shipping promotion which ended at the end of January 2007.

\*     \*     \*

For the six months ended June 30, 2007, revenues were $83.8 million, a 24.9% increase compared with $61.7 million reported for the six months ended 2006. Gross profit increased 30.4% to $22.0 million from $16.9 million in the six months ended June 30, 2006. Gross margin for the first half of 2007 was 26.2% versus 25.1% in the first half of 2006. Operating expense leverage improved for the first six months of 2007 as operating expenses were $14.6 million, or 17.4% of sales. In the same period in 2006, operating expenses were $13.4 million, or 19.9% of sales. Income from operations in the first six months of 2007 was $7.4 million or 8.8% of sales as compared to $3.5 million or 5.2% of sales in the same period a year ago.

Net income for the six months ended June 30, 2007 was $6.3 million, or $0.27 per fully diluted share on 23.9 million weighted average shares outstanding, compared to $3.4 million, or $0.14 per fully diluted share on 23.8 million weighted average shares outstanding, in the same period of 2006.

\*     \*     \*

Business Outlook

*The Company expects revenues for the third quarter of 2007 to be in the range of $37-39 million, and expects income before income tax of approximately $3.0-3.2 million. For the full year of 2007, the Company confirms its revenue guidance of $170-$180 million, and anticipates gross margin of approximately 25-26%. The Company expects income before income tax for 2007 of $14-$15 million. The Company expects its effective tax rate for the full year of 2007 to be approximately 11%, and expects to end the year with approximately 24.5 million shares outstanding.*   [Emphasis added.]

23.     On November 12, 2007, the Company issued a press release entitled "Bidz.com, Inc. Announces Third Quarter 2007 Financial Results." Therein, the Company stated, in relevant part:

Bidz.com, Inc. (NASDAQ:BIDZ), a leading online auctioneer of jewelry, today reported strong financial results for the third quarter and nine months ended September 30, 2007.

***Net revenue for the third quarter of 2007 was $40.1 million, a 48% increase compared with $27.1 million reported for the third quarter of 2006. This increase was mainly due to the growth in demand for its jewelry products and the increase in average sales amount per order.*** During the third quarter, the Company lowered its acquisition cost per new buyer and increased the number of new buyers, orders per day, and significantly increased its average order value.

\*       \*       \*

***The Company's pre-tax income for the third quarter of 2007 was $5.2 million, above the Company's original guidance of $3.0-$3.2 million, and compared to $1.0 million in the prior period in 2006. Net income for the third quarter of 2007 increased to $3.6 million, or $0.14 per fully diluted share on 26.3 million weighted average shares outstanding, compared to net income of $997,000, or $0.04 per fully diluted share on 23.8 million weighted average shares outstanding in the same period of 2006.*** The increase in net income was due primarily to higher gross profit margins on increased revenues.

***"We are very pleased to announce such strong results for the third quarter,"*** said, David Zinberg, President and Chief Executive Officer of Bidz.com. ***"Our unique value proposition and continued focus on executing our business and achieving results has driven this performance. Our new initiatives have significantly increased sales and resulted in record gross margins for the quarter."***

Mr. Zinberg continued, ***"Looking forward, we continue to innovate to further drive sales growth and profitability. We are optimistic about the upcoming holiday period and as a result have increased our guidance for the year. We look forward to continuing to diligently execute our strategic plan in 2008 and beyond."***

In the third quarter, gross profit increased 90.6% to $12.7 million from $6.7 million in the third quarter of 2006. Gross margin in the third quarter of 2007 was 31.7%, compared with 24.6% in the same period of 2006. Gross margin benefited from the amortized co-op marketing contributions that reduced our cost of sales by $833,000 or 2.1% of net revenue. The co-op marketing contributions are amortized as a reduction to cost of sales over the estimated inventory turnover period. ***We expect gross margins for the fourth quarter to continue to improve over the corresponding prior year period as a result of continued receipt of co-op marketing dollars and continued elimination of any major shipping promotions.***

\*       \*       \*

The net income for the nine months ended September 30, 2007 was $9.9 million, or $0.40 per fully diluted share on 25.0 million weighted average shares outstanding, compared to $4.4 million, or $0.19 per fully diluted share on 23.8 million weighted average shares outstanding, in the same period of 2006.

CLASS ACTION COMPLAINT

As of September 30, 2007, the Company had $1.1 million in cash. The Company has working capital of $18.7 million and no long-term debt. The Company has no outstanding balance on its $15 million revolving line of credit.

Business Outlook

***The Company expects revenues for the fourth quarter of 2007 to be in the range of $56-$58 million, and expects pre-tax income of approximately $5.6-$6.0 million. For the full year of 2007, the Company has increased its revenue guidance to $180-$182 million and has increased its expected gross margin guidance to approximately 27-28%. The Company now expects pre-tax income for 2007 of $18.0-$18.5 million.*** The Company expects its effective tax rate for the full year of 2007 to be approximately 20.2%, and expects to end the year with approximately 26.4 million fully diluted shares outstanding.

The Company is introducing new guidance for 2008 and expects revenues to be in the range of $225-$230 million, pre-tax income of approximately $23.5-$25.5 million and gross margin of approximately 27-28%. The Company expects its effective tax rate for the full year of 2008 to be approximately 40%, and expects to end the year with approximately 30.0 million fully diluted shares outstanding. The Company expects fully taxed 2008 GAAP EPS of $0.47-$0.51.  [Emphasis added.]

24.    The statements contained in ¶¶ 22 and 23 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that the Company engaged in a practice known as "shill bidding," which artificially raised the auction price of its products; (2) that the Company was not forthright with its customers regarding "retail value" or "appraised value" of its products; (3) that the Company lacked adequate internal and financial controls; (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times; and (5) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

**The Truth Begins to Emerge**

25.    On November 26, 2007, *Citron* published an article identifying significant undisclosed problems with the Company.  According to the article entitled "Citron Adds Some Color and Clarity to Bidz.com," the Company was accumulating inventory instead of generating cash.  The article published by Citron stated in

pertinent part:

> Bidz.com is an online auction provider of off price jewelry and second tier accessories.  What makes their model unique is that everything is sold via auction. Yet, the auctions are not third party auctions as facilitated by Ebay, rather they are auctions that are controlled by the company. In this report, Citron will expose what we believe to be many red flags at BIDZ .

> \* \* \*

> Instead of generating cash, BIDZ seems to be generating a lot of inventory.  So instead of investors seeing a higher cash balance, they are seeing warehouses filled with "closeout and distress sale" jewelry.

> \* \* \*

> Most investors would prefer to see efficiencies to kick in with rising revenues, but instead, actual reported inventory levels are instead spiraling at least 300% higher than the run rate of revenue.

> \* \* \*

> Jewelry is notoriously vulnerable to valuation abuses and BIDZ's closeout and distressed merchandise is even more so.  So what points of reference do we have?  Lets compare BIDZ inventory with its competitors.  We've chosen BlueNile.com, the market leader in online jewelry sales and Overstock.com, the market leader in closeouts, who is also a major jewelry liquidator.

> \* \* \*

> Neither of these mature business models carries more than 1/4th of BIDZ alarming inventory levels.  Bidz.com wants you to believe the values it is buying are so fantastic that it can swoop up deals with 50% higher margins than industry competitors can manage for cash.  Where do these values come from?  And what cash is it using to buy all these goods?

> \* \* \*

> Ironically, BIDZ inventory levels fly in the face of its own disclosures of inventory risks, including which leads them to conclude:

> \* \* \*

> BIDZ largest supplier for years has been LA Jewelry, owned and operated by Saied Aframian, who also happens to be one of BIDZ largest shareholders. Not surprisingly, LA Jewelry is also BIDZ largest creditor, and a large participant in BIDZ co-op advertising

CLASS ACTION COMPLAINT

program. These "related party" transactions are all over BIDZ financials including:

• Over $5.3m accounts payables to a related party (nearly 20% of AP)

• Purchase of 11.6% of its merchandise from a related party

• Participation in co-op marketing (12%) by related party

• Guarantee agreement with the same party related for "minimum profit" on inventory purchased from the party.

• The related party owns 1,228,000 shares of BIDZ's stock.

Saied Aframian is a convicted felon and has served time in the Federal System for fencing stolen goods.  Not just petty crime either, but for being the prime fence for a multi-million dollar nationwide ring of stolen watches and jewelry.

We are not suggesting that Bidz sells stolen goods; rather we are observing the background of some of the individuals behind BIDZ who are most responsible for its reported profits.  The question is whether all these related party transactions cast reasonable doubt over BIDZ reported financials as a fair reflection of the health of the business.

Considering the deal to guarantee margins to the company coincided with the public offering of BIDZ, Citron concludes that Mr. Aframian was well aware that there could be a lot more money made from his stock than from selling jewelry.  Any time we have seen a company work on guaranteed margins by a large shareholder, the results have been dismal: i.e. Escala and Syntax Brillian, two stocks previously covered by Citron, now trading 90% and 60% lower respectively from date of initial report.

Speaking of the public offering, BIDZ filed a registration and began to trade on a public exchange. But Citron notes that in 2006, after paying for the preparations for an IPO, it then cancelled. Their stated reason was because insiders refused to sign lockup agreements. This alone should be a red flag.

\*       \*       \*

CLASS ACTION COMPLAINT

*Citron believes that the company is not being forthright with their customers when it comes to "retail value" or "appraised value." All of the jewelry from BIDZ shows an appraisal from AIG Labs.* This appraisal makes consumers feel as if they are getting a good deal on a credible piece of jewelry that might have a decent resale value. Going to the website of AIG we see their name on a big building, which conveys an illusion of credibility.

*Citron paid a visit to AIG labs and an illusion it is. There is no name on the building (except in Photoshop…). As a matter of fact, the only signage they have is a white piece of paper on the front door to identify them. It appears to Citron that AIG is more of an "appraisal mill," that enables Bidz.com to sell low priced items to an unknowing public.*

\*     \*     \*

*One common complaint that we see online is "shill bidding." On Wednesday, November 28, Citron will expose what we believe to be is some extremely questionable bids and bidding practices that occur on BIDZ.com.* This part 2 will have much supporting documentation that the investing public should be made aware of. Unlike eBay and other well-known auction sites, you cannot even click to contact or check the track record of bidders. And since the company is selling its own goods, rather than conducting auctions for independent sellers, the company is responsible for the legality of all aspects of the conduct of its auctions.

**Conclusion**

*It is the opinion of Citron Research that Bidz.com's business model is not sustainable.* The large related party transactions, and the background of the individuals involved certainly provide plenty of reason for doubt. It is the opinion of Citron that the recent surge in stock price is completely unwarranted and the company is going to have to start generating real cash under a verifiable and transparent inventory valuation discipline before shareholders can take its earnings seriously. [Emphasis added.] (www.citronresearch.com, November 26th, 2007).

26.      As a result of this negative news, the Company's stock dropped $3.38 per share to close at $16.56 per share, a one day decline of 17 percent on unusually heavy trading volume.

27.      On November 27, 2007, Bidz.com hosted a conference call to address the

allegations raised in the *Citron* article.   Speaking on behalf of the Company, Defendant Zinberg disclosed additional information that further harmed the Company's stock price.  An article in *Barron's* relating to the conference call stated in pertinent part:

> Speaking on a conference call with investors this afternoon to respond to a negative report yesterday from Citron Research, Bidz.com (BIDZ) CEO David Zinberg said the company learned only yesterday that Saied Aframian, manager of L.A. Jewelry, a major jewelry supplier to Bidz and a larger shareholder, had been convicted in the 1980s for
>
> fencing stolen jewelry.

> * * *

> • Zinberg says Citron's report was "untruthful," and that the company is considering legal action against Citron. Zinberg asserted that comparisons between the cash and inventory positions of Bidz.com and Blue Nile (NILE) and Overstock (OSTK) are not valid since the companies do not have the same business models.

> * * *

> • On the relationship with Aframian, he says that he has never had any reason to question his integrity, but that the company is not re-evaluating his relationship with him. He says the company has cuts its reliance on L.A. Jewelry to 12% of revenue from 35% a year ago. He also says the company could easily replace the goods they get from L.A. Jewelry from other wholesalers. He added that Aframian is a manager, but not an owner, of L.A. Jewelry.  He says that company checks out its suppliers with the Jewelry Board of Trade. He also said that he has known Aframian for 7 years.

> * * *

> • On possible shill bidding on the site, he says that shill bidding is against company policy.

> * * *

> • Zinberg says about 25% of its jewelry is sold below cost.

> • On the company's apparent sale of televisions and other goods at very far above their actual value – Zinberg says the company gets zero revenue from electronics sales. He says they are sold by certified merchants, who are allowed to sell goods on the site for free. There are about 40 certified merchants. Zinberg had no explanation for why people would bid more than $11,000 for a TV worth less than a tenth of that.

> • Zinberg insisted there was nothing strange about the many bids now on the site for a large yellow diamond ring listed on the company's home page with multiple bids worth $500,000. He says the company has no way of knowing if the bidders can actually pay for such a large purchase.

CLASS ACTION COMPLAINT

• Zinberg says about 20% of winning auction bids do not result in transactions; but he says they only book revenue on shipment of goods once cash is received.

• Nice…some wag on the Q&A portion of the call identified himself as Sherman McCoy, which is the name of the central character in Bonfire of the Vanities.

• He had no explanation for why one bidder bought 14 televisions at above-market prices.

28.     As a result of the continuing negative news, the Company's stock dropped $4.67 per share to close on November 27, 2009 at 11.89 per share on unusually heavy trading volume.

29.     Then, on November 28, 2007, *Citron* published another article which provided more information about the problems within the Company.  According to the article, entitled, "Citron Research Comments on Bidz.com," the Company had engaged in a practice known as "shill bidding" in order to artificially increase the auction price of the products on the Company's website.  The article stated in relevant part:

> Citron Research believes the bidding process at Bidz.com leaves a lot of unanswered questions.  While Citron does find the Bidz site entertaining with a unique interface, they have much to prove before it can be anointed with the big earnings multiples associated with proven business models.  This report will outline some of the obvious bidding irregularities that we have observed on the Bidz website.

> This report will not be a refutation to the conference call and will not address any new issues.

> *            *            *

> ***One common complaint that Citron observed in customer postings was shill bidding.  This led us to do our own homework. Citron focuses on presenting public domain information.  Therefore, when we suggested shill bidding, the investing public ran with the ball and found the same problems on the Bidz website that were found by Citron.  As evident in yesterday's conference call investors have already seen these auction items: $6,000 flashlight/TV combo $11,000 Television***

- 14 -
CLASS ACTION COMPLAINT

***The problem is still ongoing as we see in the live auction for a television with an MSRP of $1,499 yet the current bid on the television as of publication is $2,776.***

In an informal study, Citron offers the linked table, which outlines not only the obvious irregular bidding above, but also a pattern in the auction of over 30 TV's over more than 3 months. ***Most of these TV's are bid on hundreds of times by the same three bidders.***

What makes this attached spreadsheet so interesting is that all of these televisions were sold by Clear Solution Partners.  The owner of Clear Solution Partners is Bidz.com co-founder Matthew Mills.  Not only is he the co-founder and vendor of these televisions, he has also been an outspoken proponent of the stock as evident in the Barron's Blog.

The hundreds of unique bidders over $500,000 for the big yellow diamond ring on BIDZ homepage has now been the topic of much discussion and there is no need to restate those questions.  Citron notes that BIDZ itself stated in the conference call that it does not know whether bidders are bona fide until after an auction closes.  Therefore, Citron cannot prove that the bidding on any jewelry is fake either. Jewelry is an item that thwarts direct comparison pricing, especially on the internet.

The question that investors are left with is: Are the patterns of bidding on the televisions any indication of patterns of bidding on jewelry? Do the hundreds of repetitive bids on the TV's (often by the same bidder on separate auctions at nearly the same second) represent flying fingers of a rogue actor, or a feature of the auction software that only company insiders know about?

***Bidz.com is in need of a system that allows for more transparency of the Bidz and the integrity that comes from unedited consumer feedback within their own site.***  [Emphasis added.]

30.     As a result, the Company's stock declined an additional $1.80 per share to close on November 28, 2007 at $10.10 per share on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who

- 15 -
CLASS ACTION COMPLAINT

purchased Bidz.com's securities between August 13, 2007 and November 27, 2007, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Bidz.com's securities were actively traded on the (NASDAQ). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Bidz.com or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

> (a)     whether the federal securities laws were violated by defendants' acts as alleged herein;
>
> (b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Bidz.com; and

CLASS ACTION COMPLAINT

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Bidz.com's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements, and failures to disclose, Bidz.com's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Bidz.com's securities relying upon the integrity of the market price of Bidz.com's securities and market information relating to Bidz.com, and have been damaged thereby.

38.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Bidz.com's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Bidz.com's financial

CLASS ACTION COMPLAINT

well-being, business operations, and prospects. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Bidz.com and its financial well-being, business operations, and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

40. The defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41. During the Class Period, Plaintiff and the Class purchased Bidz.com's securities at artificially inflated prices and were damaged thereby. The price of Bidz.com's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Bidz.com, their control over, and/or receipt and/or modification of Bidz.com's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Bidz.com, participated in the fraudulent scheme alleged

herein.

43.    Additionally, during the Class Period, and with the Company's securities trading at artificially inflated prices, Company insiders sold 165,000 shares of the Company's stock for gross proceeds of $2,055,800 including over $1,840,000 in gross proceeds received by the Individual Defendants.  This trading by Company insiders is evidenced by the following chart:

| Date of Trade | Inside Trader | Number of Shares | Price per Share | Gross Proceeds |
|---|---|---|---|---|
| November 19, 2007 | Liu, Claudia | 17,500 | $17.82 | $312,000 |
| November 16, 2007 | Liu, Claudia | 37,500 | $16.79 | $630,000 |
| October 1, 2007 | Zinberg, Marina | 10,000 | $13.07 | $130,700 |
| October 1, 2007 | Zinberg, David | 30,000 | $13.07 | $392,100 |
| September 6, 2007 | Zinberg, Marina | 10,000 | $8.18 | $82,000 |
| September 5, 2007 | Zinberg, David | 5,400 | $8.60 | $46,000 |
| September 4, 2007 | Zinberg, David | 24,600 | $8.93 | $220,000 |
| August 17, 2007 | Zinberg, David | 7,501 | $8.04 | $60,000 |
| August 16, 2007 | Zinberg, David | 8,600 | $8.04 | $69,000 |
| August 15, 2007 | Zinberg, David | 13,899 | $8.18 | $114,000 |
| | **Totals:** | **165,000** | | **$2,055,800** |

**Applicability of Presumption of Reliance:**
**Fraud On The Market Doctrine**

44.    At all relevant times, the market for Bidz.com's securities was an efficient market for the following reasons, among others:

(a)    Bidz.com's securities met the requirements for listing, and were

- 19 -
CLASS ACTION COMPLAINT

listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)  As a regulated issuer, Bidz.com filed periodic public reports with the SEC and the NASDAQ;

(c)  Bidz.com regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)  Bidz.com was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

45.  As a result of the foregoing, the market for Bidz.com's securities promptly digested current information regarding Bidz.com from all publicly-available sources and reflected such information in the price of Bidz.com's securities.  Under these circumstances, all purchasers of Bidz.com's securities during the Class Period suffered similar injury through their purchase of Bidz.com's securities at artificially inflated prices and a presumption of reliance applies.

## <u>NO SAFE HARBOR</u>

46.  The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the

purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Bidz.com who knew that those statements were false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Bidz.com's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49.     The defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Bidz.com's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     The defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails,

engaged and participated in a continuous course of conduct to conceal adverse material information about Bidz.com's financial well-being, business operations, and prospects, as specified herein.

51.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Bidz.com's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Bidz.com and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Bidz.com's securities during the Class Period.

52.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

CLASS ACTION COMPLAINT

53.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Bidz.com's financial well-being, business operations, and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being, business operations, and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Bidz.com's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Bidz.com's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Bidz.com's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Bidz.com was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or

otherwise acquired their Bidz.com securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

<u>**SECOND CLAIM**</u>
**Violation of Section 20(a) of**
<u>**The Exchange Act Against the Individual Defendants**</u>

58. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of Bidz.com within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed

- 24 -

1  to have had the power to control or influence the particular transactions giving rise to
2  the securities violations as alleged herein, and exercised the same.

3    61.    As set forth above, Bidz.com and the Individual Defendants each violated
4  Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.
5  By virtue of their positions as controlling persons, the Individual Defendants are liable
6  pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of
7  defendants' wrongful conduct, Plaintiff and other members of the Class suffered
8  damages in connection with their purchases of the Company's securities during the
9  Class Period.

10    **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

11    (a)   Determining that this action is a proper class action under Rule 23
12          of the Federal Rules of Civil Procedure;

13    (b)   Awarding compensatory damages in favor of Plaintiff and the
14          other Class members against all defendants, jointly and severally,
15          for all damages sustained as a result of defendants' wrongdoing, in
16          an amount to be proven at trial, including interest thereon;

17    (c)   Awarding Plaintiff and the Class their reasonable costs and
18          expenses incurred in this action, including counsel fees and expert
19          fees; and

20    (d)   Such other and further relief as the Court may deem just and
21          proper.

22  DATED: June 3, 2009                    Respectfully submitted,

23                                         ROSMAN & GERMAIN LLP

24

25                                         Daniel L. Germain (Bar No. 143334)
                                           Germain@Lalawyer.com
26                                         16311 Ventura Boulevard
                                           Suite 1200
27                                         Encino, CA 91436-2152
                                           Telephone: (818) 788-0877
28                                         Facsimile: (818) 788-0885

- 25 -
CLASS ACTION COMPLAINT

1

2                                 BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP

3                                 D. Seamus Kaskela
skaskela@btkmc.com
David M. Promisloff

4                                 dpromisloff@btkmc.com
Steven D. Resnick

5                                 sresnick@btkmc.com
280 King of Prussia Road

6                                 Radnor, PA 19087
Telephone: (610) 667-7706

7                                 Facsimile: (610) 667-7056

8                                 ***Attorneys for Plaintiff***

9

                             **JURY TRIAL DEMANDED**

10

        Plaintiff hereby demands a trial by jury.

11

12 DATED: June 3, 2009                    ROSMAN & GERMAIN LLP

13

14

15                                 Daniel L. Germain (Bar No. 143334)
*Germain@Lalawyer.com*

16                                 16311 Ventura Boulevard
Suite 1200

17                                 Encino, CA  91436-2152
Telephone: (818) 788-0877

18                                 Facsimile: (818) 788-0885

19                                 BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP

20                                 D. Seamus Kaskela
skaskela@btkmc.com

21                                 David M. Promisloff
dpromisloff@btkmc.com

22                                 Steven D. Resnick
sresnick@btkmc.com

23                                 280 King of Prussia Road
Radnor, PA 19087

24                                 Telephone: (610) 667-7706
Facsimile: (610) 667-7056

25

26                                 ***Attorneys for Plaintiff***

27

28

CLASS ACTION COMPLAINT

## CERTIFICATION

I, Mark Walczyk ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the Complaint, and authorizes its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's purchase and sale transaction(s) in the Bidz.com, Inc. (Nasdaq: BIDZ) security that is the subject of this action during the Class Period is/are as follows:

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought (B) | Sold (S) | Date | Price per Share |
|---|---|---|---|---|---|
| Common | 100 | B | | 11/26/07 | $17.64 |
| Common | 153 | B | | 11/26/07 | $20.378 |
| Common | 300 | B | | 11/26/07 | $17.65 |
| Common | 572 | B | | 11/26/07 | $20.40 |
| Common | 700 | B | | 11/26/07 | $17.90 |
| Common | 1003 | | S | 11/27/07 | $13.41 |
| Common | 622 | | S | 11/27/07 | $13.40 |
| Common | 200 | | S | 11/27/07 | $13.416 |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.    Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below:_____.

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of May, 2009.

MARK WALCZYK

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV09- 3967 RSWL (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

**[X] Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

**[ ] Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

**[ ] Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ORIGINAL

Daniel L. Germain (Bar No. 143334)
Rosman & Germain LLP
16311 Ventura Blvd., Suite 1200
Encino, CA 91436-2152
Telephone: (818) 788-0877; Fax: (818) 788-0885
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WALCZYK, Individually and On Behalf of All Others Similarly Situated<br><br>PLAINTIFF(S),<br><br>v.<br><br>BIDZ.COM, INC., DAVID ZINBERG, LEONID KUPERMAN, LAWRENCE Y. KONG and CLAUDIA Y. LIU,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV09-03967** RSWL (AGRx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __Daniel L. Germain_____, whose address is _16311 Ventura Blvd., Suite 1200, Encino, CA 91436-2152_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___**JUN - 3 2009**___

By: _____
           Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    **SUMMONS**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

COPY

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

MARK WALCZYK, Individually and On Behalf of All Others Similarly Situated

**DEFENDANTS**

BIDZ.COM, INC., DAVID ZINBERG, LEONID KUPERMAN, LAWRENCE Y. KONG and CLAUDIA Y. LIU,

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Daniel L. Germain, Rosman & Germain LLP, 16311 Ventura Blvd., Suite 1200 Encino, CA 91436-2152; Telephone: (818) 788-0877

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT:** $ According to Proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Section 10(b) of The Exchange Act and Rule 10b-5

**VII. NATURE OF SUIT** (Place an X in one box only.)

| | | PERSONAL INJURY | PERSONAL PROPERTY | | |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☒ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**CV09-03967**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                CIVIL COVER SHEET                                Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s): <u>2:09-cv-03671-CBM-E</u>

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)    ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
                                ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                ☐ D.  Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Pennsylvania |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California |  |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date June 3, 2009

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |